# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### ROANOKE DIVISION

| | | |
|---|---|---|
| **STEPHEN LAMARCK ROBERTS,** | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 7:20CV00484 |
| | ) | |
| v. | ) | **OPINION AND ORDER** |
| | ) | |
| **MARK ENGELKE, ET AL.,** | ) | JUDGE JAMES P. JONES |
| | ) | |
| Defendants. | ) | |

*Stephen Lamarck Roberts, Pro Se Plaintiff; Richard C. Vorhis, OFFICE OF THE ATTORNEY GENERAL OF VIRGINIA, Richmond, Virginia, for Defendants.*

The plaintiff, Stephen Lamarck Roberts, a Virginia inmate proceeding pro se, filed this civil rights action under 42 U.S.C. § 1983 and the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc. He alleges that the defendant prison officials placed a substantial burden on his Sunni Muslim religious practice by refusing to reschedule his Orthodox Jewish meals to allow him to observe the Ramadan fast in April and May of 2020 at Red Onion State Prison ("Red Onion"). After review of the record, I conclude that the defendants' Motion for Summary Judgment must be granted.

## I. BACKGROUND.

For years, the Virginia Department of Corrections ("VDOC") has provided its inmates the option of the Common Fare diet program, designed to reasonably

accommodate the basic nutritional needs of inmates whose religious dietary needs cannot be met by the Master Menu. VDOC policy provides that all foods purchased for Common Fare, except fresh fruits and vegetables, must be "certified by a recognized Orthodox Standard, such as 'U,' 'K,' or 'CRC.'" Defs.' Mem. Supp., Engelke Decl. ¶ 4, ECF No. 38-1. Common Fare meals include no pork or pork derivatives, and all Common Fare foods are stored separately from food items for other menus. Staff prepare Common Fare meals at VDOC facilities in designated areas, using specially labeled Common Fare pans, lids, utensils, and equipment used for no other purpose. These kitchen areas, utensils, and meals are designed "to be in compliance with Jewish and Muslim dietary laws." *Id.*

As a result of litigation by an Orthodox Jewish inmate, VDOC now also offers an additional religious diet — the Orthodox Jewish Kosher Diet ("OJKD"). *Id.* ¶ 5. This religious diet program was created specifically for Orthodox Jewish inmates whose beliefs require that food cannot be "Kashrut" as required unless an Orthodox Jewish Rabbi supervises the food preparation to ensure Kashrut standards are met. Engelke Decl. ¶ 5. In this one respect, Common Fare meals did not accommodate the dietary needs of Orthodox Jewish inmates. OJKD meals are prepackaged in a Kosher kitchen at the Southampton Agri-Business Center with active supervision by an Orthodox Rabbi. The prepackaged OJKD meals, which are either frozen or shelf-stable, are comparable in variety and consistency with Common Fare meals. VDOC

formulates both the Common Fare and the OJKD menus and all procedures for the Jewish faith with the help of a Rabbi, and both meal programs qualify as Kosher. *Id.*

Ramadan is a month-long, daytime fast observed by traditional Muslims and the World Community of Islam ("WCI"). In similar fashion, adherents of the Nation of Islam ("NOI") and the Moorish Science Temple of America ("MSTA") observe the Month of Fasting. Both observances end with a version of the Eid-ul-Fitr Feast. The date range for these events varies year to year according to Islamic calendars. The VDOC Food Service Manual provides detailed procedures for accommodation of these inmate groups' dietary needs during such religious observances. *Id*. at Enclosure A. In February 2020, the VDOC Chief of Operations issued a seven-page letter to wardens, after consulting with the Islamic Center of Virginia, setting out procedures for the Ramadan/Month of Fasting observances to occur between April 24 and May 23, 2020. *Id*. at Sykes Aff. Enclosure A, ECF No. 38-2.

Red Onion officials issued a memorandum to inmates on March 10, 2020, announcing the dates for the Ramadan/Month of Fasting observance. To be eligible for Ramadan participation, an inmate must have completed a "Request to Attend Religious Activity First Quarter 2020 form" indicating his wish to access activities for the religion he has selected. Sykes Aff. Enclosure B. An eligible inmate must then submit an Offender Request Form to the chaplain within thirty days before the

fasting observance to confirm his intention to participate, according to his previously selected religion.

Each year the VDOC dietician designs four separate, nutritionally adequate menus for the Ramadan/Month of Fasting period: for Muslim and WCI inmates — a Ramadan menu and a Common Fare Ramadan menu, and for NOI and MSTA inmates — a Month of Fasting menu and a Month of Fasting Common Fare menu. During the month-long observance, breakfast meal service occurs before astronomical twilight, and dinner service occurs after sunset. In addition, at the end of dinner service, each participant receives a bagged meal as his third meal of the day. For food safety reasons, a fasting participant must sign a "4-Hour Rule Agreement," acknowledging that he agrees to eat or discard the foods in the bagged meal within four hours. Sykes Aff. Enclosure C. In preparation for these religious observances, prison officials compile two separate lists to indicate inmates' selections of feast meals. Officials must also track and inform food service staff of inmates' individual religious meal selections.

Roberts identifies himself as a practicing Orthodox Sunni Muslim who believes that his diet should follow the standards of "Kashrut (Jewish Dietary Laws) which require an Orthodox Rabbi . . . to be actively supervising (physical presence) all aspects of the 'Kosher diet.'" Mem. Opp'n Mot. Summ. J. Roberts Decl. ¶ 3, ECF No. 47-1. Roberts believes that "Halal foods that adhere to Orthodox Sunni

-4-

Muslim Halal requirements of Islamic Dietary laws . . . are analogous with . . . Orthodox Kosher."  He asserts that many so-called Kosher foods as designated by individuals with "Modernist religious views" are not Kosher because they do "not conform with Orthodox/Orthodox Jewish requirements of the Kashrut."  *Id.* at ¶ 4.

Roberts states that when he entered VDOC custody in 2005 or 2006, Common Fare was the only "Kosher diet" available for inmates and was designed to satisfy the Kashrut standard.  *Id*. at ¶ 5.  Roberts believes during this time, Common Fare meals were precooked at certified Kosher facilities and then packaged and sent to prisons.  Roberts was approved for Common Fare meals as a proper accommodation of his religious dietary beliefs and followed that program the majority of his incaration.  VDOC also served his Common Fare meals according to the fasting schedule of Ramadan during those years.  At some point, according to Roberts, VDOC restructured the Common Fare program to follow Modernists' religious views and allowed Common Fare meals to be prepared in "VDOC's non-Kosher kitchen facilities without the need for a Rabbi to actively supervise to assure that the Laws of Kashrut [were] being followed."  *Id.* at ¶ 9.  Roberts states that although Common Fare "was no longer Kosher and religiously fit for [him] to eat," he remained in the program "because there was no available alternative" that allowed him to follow a "Kosher Diet/Kashrut."  *Id.* at ¶ 10.  He claims that he declined to

eat many of the foods on Common Fare during this unspecified period of time and "became emaciated and sickly from lack of food." *Id.*

Roberts states that he "heard through the prison grapevine (word of mouth)" that VDOC had implemented an orthodox Jewish diet precooked and packaged with a Rabbi supervising the process. *Id.* at ¶ 11. He completed a Request to Attend Religious Activity form in June 2019, selecting the "Islam-Sunni" group. Sykes Aff. Enclosure C, at 20, ECF No. 38-2. That same month, Roberts wrote to VDOC Food Service Director Engelke, asking to be placed on the "Orthodox Jewish Diet." Engelke Decl. Enclosure B, ECF No. 38-1. Roberts stated

> It is my firmly held religious belief that because of the changes made to the Common Fare Diet that it[']s no longer ritually fit (Kosher) for the use of my religious practices and beliefs. The Common Fare meals have become so bastardized and adulterated that it do [sic] not meet Orthodox Jewish Dietary Laws and standards. The Orthodox Jewish Diet observe [sic] the strict conservative Orthodox Jewish Dietary Laws of the Faith, in the ritualistic practices and rites in the slaughtering and preparation of meats, in the cultivating and manufacturing and process of produce, dairy products, and in the cooking, processing and service of foods/meals. Which makes the Orthodox Jewish Diet ritually fit for use according to my sincerely held religious beliefs. For the reason given above I need to be placed on the Orthodox Jewish Diet so I can adhere to my sincerely held religious beliefs and practices.

*Id.* Notably, Roberts's letter to Engelke did not mention that he is a Sunni Muslim. In July 2019, the Institutional Classification Authority conducted a Common Fare Assignment hearing and recommended approval for Roberts to receive OJKD meals. Sykes Aff. Enclosure C, at 22, ECF No. 38-2.

When Red Onion officials announced the dates for Ramadan 2020, Roberts submitted a request to the chaplain to participate in the observance and signed a 4-Hour Rule Agreement.  On the bottom of that form, Roberts wrote: "I wish to rec[ei]ve my Commonfare Orthodox Jewish Meal during Ramadan."  *Id*. at 14. Roberts also allegedly discussed this dietary intention with several defendants in person in the days before Ramadan began.

VDOC officials designing procedures for Muslim inmates observing the Ramadan fast do so "in consultation with Muslim Chaplain Service of Virginia, Inc." Engelke Decl. ¶ 8, ECF No. 38-1.  No one anticipated that a Muslim inmate would sign up for OJKD diet and expect to have it adjusted to follow the Ramadan meal schedule.  Thus, in 2020, VDOC had not developed "an Orthodox Jewish Diet menu for the month-long Muslim Ramadan observance."  *Id.* at ¶ 7.

In response to Roberts's request to receive OJKD meals on a Ramada schedule, Sykes contacted Bernard Morris, VDOC Religious Advisor, on March 16, 2020.  Morris promised to meet with Food Service Director Engelke about the request.  Red Onion Food Operations Director Almarod later informed Sykes in 2020, that "VDOC does not provide an Orthodox Jewish Diet menu specifically for the Muslim month of Ramadan, and there is no Orthodox Jewish bag meal that can be provided after sunset that would comply with the 4-hour agreement." Sykes Aff. ¶ 10, ECF No. 38-2.  Counselor Gibson noted in the prison computer system,

VACORIS, that he had discussed with Roberts his choices for Ramadan: (1) stop receiving OJKD meals and receive Common Fare meals served to accommodate the Ramadan fasting schedule; or (2) continue to receive OJKD meals, but not on the Ramadan fasting schedule.

Roberts elected to continue receiving his OJKD meals during Ramadan 2020. He allegedly attempted for several days at a time to save his OJKD meals and eat them after sunset. But he states that he became sick and had to return to the regular OJKD meal schedule. He asserts that he was only able to fast for seven of the thirty days of Ramadan in 2020.

According to Engelke, in preparation for Ramadan 2021, VDOC reconfigured the OJKD menu to accommodate fasting during the observance of Ramadan. Beginning in 2021, VDOC policy provided that inmates like Roberts who were approved to receive the OJKD meals could continue to receive those meals and participate in the Ramadan fasting observance. The published policy now provides that during Ramadan, the participating inmate will be served OJKD breakfast meal before sunrise and an OJKD dinner meal after sunset, and receive a bagged meal to eat or discard within four hours after the dinner meal. The OJKD menu also now provides a post-Ramadan feast meal. Roberts confirms that he received his OJKD meals according to the Ramadan schedule during the 2021 observance of this religious rite. I also take judicial notice of VDOC food service policies available

online, which indicate that an inmate on the Sealed Religious (OJKD) diet, who requests to participate in the Observance of Ramadan may receive OJKD meals served to accommodate the Ramadan fasting hours.  *See* VDOC, *Food Service Manual* Chap. 4 at 10 (2021), https://vadoc.virginia.gov/files/operating-procedures/500/ vadoc-op-500-1-c4.pdf.

Roberts filed his Amended Complaint in April 2021, asserting that the defendants' actions in 2020 violated his rights under the Free Exercise Clause of the First Amendment and RLUIPA; created a diet for only Orthodox Jewish inmates, in violation of the Establishment Clause; and treated him differently than others in violation of the Equal Protection Clause of the Fourteenth Amendment.  The defendants have moved for summary judgment, arguing that damages are not available under RLUIPA, injunctive relief is moot, and they are entitled to qualified immunity as to all other claims.  Roberts has responded to the defendants' motion, making it ripe for consideration.

## II.  DISCUSSION.

### A.  The Standards of Review.

A district court should dismiss a complaint under Rule 12(b)(6) if, accepting all well-pleaded allegations in the complaint as true and drawing all reasonable factual inferences in the plaintiff's favor, the complaint does not allege "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*,

550 U.S. 544, 570 (2007).  "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Id.* at 555.[1]  Moreover, a court need not "accept the legal conclusions drawn from the facts" or "accept as true unwarranted inferences, unreasonable conclusions, or arguments."  *E. Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000).  A court should grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A genuine dispute exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The defendants have filed a supporting declaration and affidavit and documentation.  Accordingly, to avoid summary judgment, Roberts must present sufficient evidence that could carry the burden of proof of his claims at trial.  He "may not rest upon the mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine [factual] issue for trial" on which the jury could find in his favor.  *Id.*

---

[1]  I have omitted internal quotation marks, alterations, and citations here and throughout this Opinion, unless otherwise noted.

A pro se litigant's verified complaint and other verified submissions must be considered as affidavit(s) and may defeat a motion for summary judgment when the allegations contained therein are based on personal knowledge. *Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991). "[U]nsupported speculation is not sufficient to defeat a summary judgment motion," however. *Baber v. Hosp. Corp. of Am.*, 977 F.2d 872, 875 (4th Cir. 1992).

## B.  Initial Matters and Injunctive Relief.

Some of Roberts's claims for monetary damages fail at the outset.  The defendants are protected by immunity against damage claims for actions taken in their official capacities. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58 (1989). Moreover, monetary damages are not available under RLUIPA for any of the defendants' alleged actions. *Sossamon v. Texas*, 563 U.S. 277, 285-86 (2011) (finding damages not recoverable against defendants in their official capacities under RLUIPA); *Rendelman v. Rouse*, 569 F.3d 182, 188-89 (4th Cir. 2009) (finding no RLUIPA claim for damages available against defendants in their individual capacities).  Therefore, I will grant summary judgment for the defendants on all claims for monetary damages against the defendants in their official capacities and all claims for monetary damages under RLUIPA.

Roberts also seeks injunctive relief in this case.  The defendants contend that injunctive relief is moot, because VDOC policy now provides for the dietary

accommodations Roberts requires for his religious practice of receiving OJKD meals on a schedule to accommodate his fasting during Ramadan.  I agree.

The federal courts have jurisdiction to decide actual cases or controversies of certain types.  U.S. Const. art. III, § 2.  "When a case or controversy ceases to exist — either due to a change in the facts or the law — 'the litigation is moot, and the court's subject matter jurisdiction ceases to exist also.'"  *Porter v. Clarke*, 852 F.3d 358, 363 (4th Cir. 2017).  "Put differently, 'a case is moot when the issues presented are no longer "live" or the parties lack a legally cognizable interest in the outcome.'"  *Id.*

Roberts concedes that he received his OJKD meals during Ramadan on a schedule that allowed him to observe the fast his Muslim beliefs dictate.  He argues, however, that VDOC policy and practice for Ramadan could change tomorrow, so his request for injunctive relief is not moot.  This argument is worthy of consideration.  "[A] defendant claiming that its voluntary compliance moots a case bears the formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur."  *Id.* at 364.  Notably, "a governmental entity's change of policy renders a challenge moot when the governmental entity has not asserted its right to enforce [the challenged policy] at any future time."  *Id.*  Mootness has also been questioned, for example, in cases where a policy change occurred only with reluctance in light of court decisions

during litigation, or where authorities made the change only with the proviso that they might return to the challenged conduct in the future, depending on circumstances. *Id.* at 364–65.

In this case, I am satisfied that Roberts has presented no disputed fact on which he could show any reasonable expectation that VDOC would revoke Ramadan accommodations for his already approved OJKD meal program. The defendants have not questioned the sincerity of Roberts's stated belief that he requires both OJKD meals and Ramadan fasting accommodations to practice his Sunni Muslim beliefs. Long before this court issued any legal rulings on Roberts's claims in this case, VDOC officials altered the published religious diet policy to document prison officials' obligation to accommodate Roberts's stated religious practices. Specifically, the published policy requires that inmates approved to receive OJKD meals must also receive accommodations to continue receiving those meals according to the Ramadan observance schedule if they elect to celebrate this fasting rite.

Moreover, I find no indication in the record that this policy change was reluctant or temporary. Rather, the defendants' evidence is that before Ramadan 2020, VDOC officials and religious advisors simply did not foresee the need to adapt the OJKD meal program (originally designed for Orthodox Jewish inmates) to meet the complex scheduling and meal adjustment requirements of the Muslim Ramadan

fasting observance.   As stated, the published VDOC food service policy now expressly provides for this accommodation for inmates approved to receive OJKD meals.   Roberts has presented no evidence to suggest that this policy adaptation is not permanent.   Accordingly, I will grant the defendants' Motion for Summary Judgment as to Roberts's claims for injunctive relief because such claims are moot. Therefore, Roberts's remaining claims are against the defendants in their individual capacities, seeking monetary damages under the First and Fourteenth Amendments.

## C.  Qualified Immunity.

"Generally, qualified immunity operates to protect law enforcement and other government officials from civil damages liability for alleged constitutional violations stemming from their discretionary functions."  *Raub v. Campbell*, 785 F.3d 876, 880–81 (4th Cir. 2015).

> "Qualified immunity attaches when an official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *White v. Pauly*, 580 U.S. ___, ___, 37 S. Ct. 548, 551, 196 L. Ed. 2d 463 (2017) (per curiam) (internal quotation marks omitted).  A right is clearly established when it is "sufficiently clear that every reasonable official would have understood that what he is doing violates that right."  *Mullenix v. Luna*, 577 U.S. 7, 11, 136 S. Ct. 305, 193 L. Ed. 2d 255 (2015) (per curiam) (internal quotation marks omitted).  Although "this Court's case law does not require a case directly on point for a right to be clearly established, existing precedent must have placed the statutory or constitutional question beyond debate."  *White*, 580 U. S., at ___, 137 S. Ct., at 551 (alterations and internal quotation marks omitted).

*Rivas-Villegas v. Cortesluna*, 142 S. Ct. 4, 7–8 (2021).  Using case-specific facts, the qualified immunity analysis considers "(1) whether the plaintiff has established the violation of a constitutional right, and (2) whether that right was clearly established at the time of the alleged violation." *Raub*, 785 F.3d at 881.  However, the court need not address both of these inquiries and can take them in "the order . . . that will best facilitate the fair and efficient disposition of each case." *Id.*

Roberts asserts three constitutional claims related to his religious diet and Ramadan 2020 — under the First Amendment's Free Exercise Clause, its Establishment Clause, and the Equal Protection Clause of the Fourteenth Amendment.  I conclude that as to each of these claims, the defendants are entitled to qualified immunity against Roberts's claims for monetary damages.

### 1. First Amendment — Free Exercise.

"Inmates clearly retain protections afforded by the First Amendment,[2] including its directive that no law shall prohibit the free exercise of religion." *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987).  To state a claim for violation of rights secured by the Free Exercise Clause, an inmate, "must demonstrate that: (1) he holds a sincere religious belief; and (2) a prison practice or policy places a

---

[2] The First Amendment proscribes "law[s] respecting an establishment of religion, or prohibiting the free exercise thereof."  U.S. Const. amend. I, §§ 1, 2.  It applies to state governments through the Fourteenth Amendment.  *Bd. of Educ. of Kiryas Joel Vill. Sch. Dist. v. Grumet*, 512 U.S. 687, 690 (1994).

substantial burden on his ability to practice his religion." *Wilcox v. Brown*, 877 F.3d 161, 168 (4th Cir. 2017).   For constitutional purposes, such a burden is one that "put[s] substantial pressure on an adherent to modify his behavior and to violate his beliefs," *Thomas v. Review Bd. of Ind. Emp. Sec. Div.*, 450 U.S. 707, 718 (1981), or one that forces him to "choose between following the precepts of her religion and forfeiting [governmental] benefits, on the one hand, and abandoning one of the precepts of her religion . . . on the other hand," *Sherbert v. Verner*, 374 U.S. 398, 404 (1963).

Roberts contends that his sincere Sunni Muslim beliefs require him to follow Kashrut dietary standards and to follow the Ramadan fasting schedule.   The defendants do not deny that the Common Fare program in 2020 did not meet the requirements of Kashrut.   Thus, taking Roberts's verified statements about his religious beliefs as true, as I must on summary judgment, I can only conclude that VDOC's failure to adjust the OJKD meal schedule to allow Roberts to consume that diet and follow the Ramadan fasting observance placed a substantial burden on his ability to practice his sincere Sunni Muslim religious dietary beliefs.   Thus, he has defeated the first step of the defendants' qualified immunity defense.   *Raub*, 785 F.3d at 881.

The defendants may also prevail on their qualified immunity defense if the right at issue was not clearly established.

> For a right to have been clearly established, "the 'contours of the right' must have been so conclusively drawn as to leave no doubt that the challenged action was unconstitutional." *Swanson v. Powers*, 937 F.2d 965, 969 (4th Cir. 1991) (quoting *Anderson*, 483 U.S. at 640). In determining whether a right was clearly established at the time of the claimed violation, "courts in this circuit [ordinarily] need not look beyond the decisions of the Supreme Court, this court of appeals, and the highest court of the state in which the case arose.

*Edwards v. City of Goldsboro*, 178 F.3d 231, 251 (4th Cir. 1999). Most importantly in a qualified immunity inquiry, I must consider "whether a reasonable person in the official's position would have known that his conduct would violate that right." *Id.*

I find no case law suggesting that it was clearly established in the Supreme Court, the Fourth Circuit, or the Supreme Court of Virginia in the spring of 2020 that a Sunni Muslim inmate's beliefs would require him to receive meals supervised by an Orthodox Jewish Rabbi as part of his Muslim Ramadan observance. Roberts provides no case law establishing this right prior to Ramadan 2020. Because the religious dietary accommodation Roberts was seeking was not clearly established as a First Amendment right before Ramadan 2020, I conclude that the defendants cannot be held liable for monetary damages, based on their failure to provide such accommodations at that time.[3] *Raub*, 785 F.3d at 881. I will grant the defendants' motion as to Roberts's Free Exercise claim on the ground of qualified immunity.

---

[3] Roberts asserts that from his application to receive OJKD meals, approved in July 2019, the defendants should have foreseen that he would also want to receive those meals during the Ramadan fasting observance. What officials should have recognized presents, at the most, a claim that they negligently failed to recognize Roberts's possible future

2.   First Amendment — Establishment Clause.

Roberts also asserts that by creating the OJKD to accommodate the religious practices of Orthodox Jewish inmates, defendants Clarke and Engelke violated the Establishment Clause of the First Amendment.   Roberts misunderstands the protections provided by this constitutional provision and its interplay with the Free Exercise Clause.   The Supreme Court explained this relationship in *Cutter v. Wilkinson*, 544 U.S. 709 (2005), upholding RULIPA against an Establishment Clause challenge.   The Court recognized that prison inmates, "who are unable freely to attend to their religious needs," must depend on government accommodation to exercise their religious practices.   *Id.* at 721.   Such accommodations, when they are administered neutrally among different faith groups and do not confer "privileged status" or "disadvantageous treatment" on any religious sect, do not qualify as a government endorsement of a particular religion so as to fall afoul of the Establishment Clause.   *Id.* at 720, 724; *see also Cnty. of Allegheny v. Am. C.L. Union Greater Pittsburgh Chapter*, 492 U.S. 573, 590–91 (1989) (symbols of different

---

religious needs, a claim that is insufficient to support a claim that they violated Roberts's First Amendment rights.   *See Lovelace v. Lee*, 472 F.3d 174, 201 (4th Cir. 2006) (holding that "negligent acts by officials causing unintended denials of religious rights do not violate the Free Exercise Clause").   Moreover, it is clear from the record that dietary adjustments for a month-long religious observance require advance planning, religious and nutritional research, considerations of food safety issues, ordering of supplies, and setting up scheduling details.   To comply with Roberts's religious beliefs requiring rabbinical supervision of food preparation, the defendants did not have the option of throwing together a bagged meal from foods already on hand, as Roberts suggests.

religions displayed together did not have unconstitutional effect of endorsing one religious faith so as to violate Establishment Claims),[4] *abrogated in different context by Town of Greece v. Galloway*, 572 U.S. 565 (2014).

The facts in this case do not support a claim of governmental endorsement of a particular religious faith.  It is undisputed that VDOC officials designed the OJKD to accommodate the dietary needs of Orthodox Jewish inmates not met by Common Fare.  Creation of this diet did not single out that one faith for preferential or disadvantageous treatment or status.  Moreover, VDOC now provides this same diet to Roberts, a Sunni Muslim, to accommodate his stated, sincere religious dietary needs.  This fact demonstrates that the OJKD is a neutrally administered accommodation of religious dietary needs, and not a governmental endorsement of any specific religious faith over others.

Because Roberts's evidence does not support a claim that the defendants' actions violated his rights under the Establishment Clause, the defendants are

---

[4] In *County of Allegheny*, the Court summarized government actions barred by the Establishment Clause:

> In the course of adjudicating specific cases, this Court has come to understand the Establishment Clause to mean that government may not promote or affiliate itself with any religious doctrine or organization, may not discriminate among persons on the basis of their religious beliefs and practices, may not delegate a governmental power to a religious institution, and may not involve itself too deeply in such an institution's affairs.

492 U.S. at 590–91.

entitled to qualified immunity as to his claims for damages under this provision. *Raub*, 785 F.3d at 881.  I will grant the defendants' motion on that ground.

### 3.  Fourteenth Amendment — Equal Protection.

Roberts complains that VDOC policies provide for inmates of other religious faiths to consume a diet in keeping with their beliefs and to observe their religious holidays as well.  Thus, he contends that the defendants' refusal to serve his OJKD meals according to a Ramadan fasting schedule constituted different treatment of similarly situated individuals, in violation of his rights under the Equal Protection Clause.  I can find no Equal Protection violation alleged here.

The Equal Protection Clause of the Fourteenth Amendment provides that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws."  U.S. Const. amend. XIV, § 1.  This provision "does not take from the States all power of classification, but keeps governmental decisionmakers from treating differently persons who are in all relevant respects alike."  *Morrison v. Garraghty*, 239 F.3d 648, 653–54 (4th Cir. 2001); *see also King v. Rubenstein*, 825 F.3d 206, 220 (4th Cir. 2016) (recognizing "validity of 'class of one' Equal Protection claims, where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment").

Roberts's Equal Protection claim fails on the first facet of the analysis. He has not shown that he was similarly situated in all relevant respects to the Orthodox Jewish inmate for whom VDOC designed the OJKD program in 2019 based on the facts of a particular lawsuit. It is undisputed that officials set up the OJKD menus to accommodate inmates keeping the holy days and observances of Orthodox Jews. As a Sunni Muslim, Roberts then asked for accommodation of different holy days and observances, including Ramadan — contingencies officials had not reasonably contemplated for the OJKD program in 2019-2020. As discussed, officials took great pains to research and arrange for such dietary accommodations for Ramadan 2021. Because Roberts has failed to state an Equal Protection claim here, that he was treated differently from similarly situated inmates, I will grant the defendants' Motion for Summary Judgment as to this claim on the ground of qualified immunity. *Raub*, 785 F.3d at 881.

### III.  Conclusion.

In accordance with the foregoing, it is **ORDERED** that the defendants' Motion for Summary Judgment, ECF No. 37, is GRANTED.

A separate Judgment will enter herewith.

ENTER:  March 14, 2022

/s/  James P. Jones
Senior United States District Judge